GILBERT M. AND MARTHA H. HITCHCOCK FOUNDATION, A
NEBRASKA NONPROFIT CORPORATION, ET AL., APPELLEES,
v. DENMAN KOUNTZE, JR., ET AL., APPELLANTS.

720 N.W.2d 31

Filed August 18, 2006.    No. S-04-1385.

David J. Lanphier, of Broom, Johnson, Clarkson & Lanphier, and David A. Domina and Michael C. Stumo, of Domina Law, P.C., for appellants.

Edward D. Hotz and Shawna D. Peterson, of Hotz, Weaver, Flood, Breitkreutz & Grant, for appellees.

HENDRY, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ., and HANNON, Judge, Retired.

GERRARD, J.

## NATURE OF CASE

The appellees, members of the board of trustees (the Board) of the Gilbert M. and Martha H. Hitchcock Foundation (the Foundation), brought a derivative action on behalf of the Foundation against the appellants, also members of the Board, after a series of disagreements among the parties made management of the Foundation effectively impossible. The district court made numerous findings on issues, including the validity of Board meetings held separately by the parties and the requested removal of Board members. The appellants filed a post-trial motion challenging the court's jurisdiction to consider the case absent evidence that the appellees notified the Attorney General as required by statute, which motion the court overruled. Because effective notice to the Attorney General is essential to protecting the public interest in the management of charitable corporations, we conclude that the court erred in exercising jurisdiction without evidence that effective notice was given. We reverse the judgment of the district court.

## BACKGROUND

The Foundation was established for charitable, religious, and educational purposes and was principally funded through a bequest in Martha H. Hitchcock's will. Since 1962, the Foundation has donated nearly $16 million to numerous charitable, religious, and educational organizations, including Brownell-Talbot School, Joslyn Art Museum, Omaha Botanical Gardens, Trinity Cathedral, United Way of the Midlands, and Western Heritage Museum. The Foundation is a 501(c)(3) corporation under the Internal Revenue Code and is a public benefit corporation under the Nebraska Nonprofit Corporation Act. See Neb. Rev. Stat.

§ 21-19,177(3) (Reissue 1997). Management of the Foundation is vested in the Board. In January 2002, the Board consisted of Denman Kountze, Jr.; Charles Kountze; and Edward Kountze (collectively the appellants); Neely Kountze; Mary Kountze (Mary); and Tyler Gaines (collectively the Local Trustees); Paul Shirley; and Ron Ruh. Pursuant to the Foundation's bylaws, a majority of the Board constitutes a quorum, provided that such quorum includes Mary Mallory Kountze, Mallory Kountze, or Denman Kountze, Jr. Of the three names specified, Denman was the only one living at the time of trial.

The last valid and undisputed meeting conducted by the Board occurred in January 2002, during which Denman, as president of the Foundation, asked Thomas Burke, the Foundation's secretary, manager, counsel, and registered agent, to resign as secretary of the Foundation. Edward was then elected secretary of the Foundation.

In April 2002, Ruh resigned as trustee of the Foundation. On September 18, 2002, a meeting of the Foundation was commenced at First National Bank. The appellants and the Local Trustees were present, along with Robert Cohen, an attorney with the Kutak Rock law firm, and two First National Bank trust officers. Shirley participated by telephone. During the meeting, the Board agreed to appoint First National Bank as registered agent of the Foundation. In discussing replacements for Ruh on the Board, Charles and Edward suggested Edward's wife and Peter Cunningham as replacements, while Neely suggested John Webster as successor trustee.

Ballots were distributed, and a vote on a replacement took place two times during the meeting. On both occasions, the appellants refused to participate in the vote, claiming that the election was not properly part of the agenda and that the meeting was not a formal meeting at which an election could be conducted. The appellants left the room in protest, but a dispute exists as to whether they were in the room at the time the two votes were conducted. During both votes, the Local Trustees and Shirley voted for Webster to serve on the Board.

In late September 2002, the Nebraska Secretary of State sent a notice of rejection, notifying the Foundation that First National Bank could not serve as registered agent. In December, without

conducting a vote of the Board or informing the Local Trustees, Edward and Denman filed a form changing the registered agent and office of the Foundation to Cohen and the Kutak Rock law firm, respectively. In addition, Denman requested that a $125,000 check on the Foundation's account be issued to Columbia University, without Board approval or authorization. The check was issued by the bank, but payment of the check was promptly stopped by the Local Trustees upon discovery that the check had been issued.

In January 2003, the Local Trustees and Webster (collectively the appellees) distributed notice of an annual meeting for the Foundation at Burke's office on January 14 at 9 a.m. to the trustees of the Foundation, including Denman, Edward, Neely, Gaines, Charles, Mary, and Webster. Shirley had since passed away.

At 8:30 a.m. on January 14, 2003, a meeting commenced at the Kutak Rock law firm, and those present included Charles, Denman, Edward, and David Clark. A court reporter was present to record the meeting. The appellants telephoned Mary and, when she answered, declared a quorum. Despite Mary's questions regarding whether the other trustees were aware of the meeting, Edward called a vote to elect Clark to the Board. Upon hearing this, Mary hung up the telephone. The meeting at the Kutak Rock law firm continued. Charles' term on the Board was renewed, Webster's election to the Board was declared void, Cunningham was elected to the Board, Denman was reelected president and elected treasurer, and Edward was elected vice president and secretary.

Meanwhile, the appellees held their meeting at Burke's office at 9 a.m. on the morning of January 14, 2003, and reelected Charles and Gaines to the Board, reelected Denman as president and Neely as vice president, elected Gaines as secretary, and elected Mary as treasurer. The appellees also amended the quorum requirement to provide that a majority of the trustees constitute a quorum, "provided such quorum includes a current member of the Board of Trustees who is a lineal descendant of Mary Mallory Kountze."

On January 21, 2003, the appellees filed a derivative complaint against the appellants on behalf of the Foundation, making various allegations regarding the events of the previous year

and requesting a declaratory judgment that Webster's election to the Board was valid; that action taken by the appellants at their January 14 meeting was invalid due to deficient notice and lack of a quorum; and that the change of registered agent to Cohen was without the Board's authorization and was, therefore, invalid. In addition, the appellees requested a court-ordered meeting of the Foundation to dispense of the quorum requirement or, alternatively, an order ratifying the appellees' actions at their January 14 meeting. The appellees also requested an injunction preventing the appellants from conducting or attempting to conduct further business of the Foundation. Finally, the appellees asked the court to remove Denman, Edward, and Charles as trustees, for breaching their fiduciary duty to the Foundation, and to award damages.

The appellants denied the allegations of the complaint and affirmatively alleged, in part, that the appellees lacked standing to bring a derivative action. In addition, the appellants asserted a counterclaim making numerous allegations and requesting that the appellees be enjoined from convening any Foundation meeting and that Webster be enjoined from participating in Foundation matters. The appellants also requested a declaratory judgment that Webster's election to the Board was invalid; that the September 2002 meeting of the Foundation was not valid; that Gaines' term on the Board expired on January 14, 2003; and that Neely, Mary, and Gaines were no longer fit to serve as trustees. Further, the appellants requested a declaration that the appellees' January 14 meeting was not a valid meeting. In the alternative, the appellants requested an equitable division of the Foundation assets.

After a bench trial, the district court entered an order determining that the appellees had standing to file the derivative action under Neb. Rev. Stat. § 21-1949 (Reissue 1997). The court noted that the record failed to show any proof of notice to the Attorney General, as required by § 21-1949. However, the court concluded that such lack of notice was not a jurisdictional defect.

The court further concluded that the September 2002 meeting of the Foundation was valid. However, the court determined that Webster was not validly elected to the Board because there was no vacancy to be filled. The court explained that the bylaws of the Foundation provide for seven trustees and that even though

the Foundation had operated for many years with eight trustees, such acquiescence did not amend the bylaws to increase the size of the Board.

The court went on to find that the January 2003 annual meeting attempted by the appellees at Burke's office was not valid because, without Denman in attendance, a quorum was not present. Similarly, the court found that the appellants' attempted annual meeting held the same day at the Kutak Rock law firm was not valid.

The court removed Edward as trustee but declined to remove Denman, Charles, or any of the Local Trustees from the Board. The court found no actionable civil conspiracy on the part of the Local Trustees. The court also determined that the appointment of Cohen as registered agent was void and ordered the bylaws to be amended to remove the requirement that one of three Kountze family members be present in order to establish a quorum.

Subsequently, the parties each filed posttrial motions. The appellants filed a motion to alter or amend or, alternatively, for new trial, arguing in part that the court erred in exercising jurisdiction after finding that the appellants failed to give notice of their action to the Attorney General. The appellees filed a motion to amend the court's findings and judgment, asking the court to find that notice was provided to the Attorney General as required by § 21-1949. In addition, the appellees moved the court to reopen the record to receive evidence of their notice of the action. In their motion, the appellees claimed that they properly gave notice to the Attorney General, but due to an oversight, neglected to offer a copy of the notice to the court at trial. The court overruled all of the motions.

## ASSIGNMENTS OF ERROR

The appellants present 19 assignments of error on appeal, which may be summarized, restated, and renumbered as follows: The district court erred in (1) exercising jurisdiction despite the appellees' failure to notify the Attorney General; (2) ordering a meeting of the Foundation in March 2003, dispensing with the quorum requirement for that meeting, and enjoining the Foundation's scheduled January 2004 annual meeting; (3) finding that a valid and formal meeting of the Foundation occurred on September 18, 2002; (4) finding that a trustee can be elected

at a meeting other than the annual meeting of the Board; (5) finding that the designation of a registered agent for the Foundation requires Board . action; (6) determining that the appellants' January 2003 meeting was "deceitful and in bad faith" while the appellees' January 2003 meeting was "not valid"; (7) finding that the appellees were motivated by a desire to maintain the smooth operation of the Foundation while the appellants were selfish, not altruistic, and were eleemosynary; (8) ordering that Edward be removed from the Board; (9) ordering that the quorum provision be removed from the bylaws; (10) finding no error in the Local Trustees' correspondence with Burke; (11) failing to find that the Local Trustees' attempt to hold a special meeting was not fraudulent and dishonest; (12) failing to order the removal of Gaines, Neely, and Mary from the Board; (13) overruling the appellants' motion for recusal and/or mistrial; and (14) excluding the testimony of the appellees' expert witness.

## STANDARD OF REVIEW

■ The question of jurisdiction is a question of law, upon which an appellate court reaches a conclusion independent of the trial court. *Gabel v. Polk Cty. Bd. of Comrs.*, 269 Neb. 714, 695 N.W.2d 433 (2005).

## ANALYSIS

The first issue we address is the appellants' argument that the district court erred in hearing this case because the appellees failed to provide notice to the Attorney General, as required by statute.

Within the Nebraska Nonprofit Corporation Act, see Neb. Rev. Stat. §§ 21-1901 to 21-19,177 (Reissue 1997 & Cum. Supp. 2004), § 21-1949 provides for an action to be brought on behalf of a corporation and states, in part:

> (f) The complainants shall notify the Attorney General within ten days after commencing any proceeding under this section if the proceeding involves a public benefit corporation or assets held in charitable trust by a mutual benefit corporation.

Further, § 21-1977 states:

> (a) The district court . . . may remove any director of the corporation from office in a proceeding commenced either

by the corporation, its members holding at least ten percent of the voting power of any class, or the Attorney General in the case of a public benefit corporation . . . .

. . . .

(d) If a public benefit corporation or its members commence a proceeding under subsection (a) of this section, they shall give the Attorney General written notice of the proceeding.

The appellants argue that the appellees failed to demonstrate at trial that they notified the Attorney General of their action against the appellants as required by statute. The appellees argue that failure to notify the Attorney General is not jurisdictional. They also assert that at the hearing on their motion asking the court to amend its findings and judgment, the court was provided with proof that notice was actually provided to the Attorney General. We first consider whether an action under §§ 21-1949 and 21-1977 can proceed without notice to the Attorney General.

When an appeal calls for statutory interpretation or presents a question of law, an appellate court must reach an independent, correct conclusion irrespective of the determination made by the court below. *Caspers Constr. Co. v. Nebraska State Patrol*, 270 Neb. 205, 700 N.W.2d 587 (2005). When construing a statute, an appellate court must look to the statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it. *In re Petition of SID No. 1*, 270 Neb. 856, 708 N.W.2d 809 (2006).

Comments to the Revised Model Nonprofit Corporation Act, upon which the Nebraska act is based, indicate that the notice requirements at issue here provide the Attorney General an opportunity to learn of and evaluate the dispute and the option to join or intervene in the action. Rev. Model Nonprofit Corp. Act §§ 6.30 and 8.10 (ABA 1988). Public benefit corporations are domestic corporations which are formed as public benefit corporations pursuant to §§ 21-1920 to 21-1926 or are required to be public benefit corporations pursuant to § 21-19,177. § 21-1914(26). Such corporations, which usually do not have participants with a sufficient economic interest to ensure oversight, can only be made accountable for their use of assets if

there are broad powers of regulation in a state officer. Thus, statutory authority has been given to the Attorney General to act in the public good in enforcing the requirements applicable to nonprofit corporations, particularly public benefit corporations. In other words, the Attorney General has standing to protect the public interest. See *Summers v. Cherokee Children & Family Serv.*, 112 S.W.3d 486 (Tenn. App. 2002).

In the case of a charitable trust, the Attorney General has long been recognized as having the right to maintain an action for enforcement of the trust or to prevent a misuse of the property. *In re Estate of Grblny*, 147 Neb. 117, 22 N.W.2d 488 (1946), *overruled in part on other grounds, Anoka-Butte Lumber Co. v. Malerbi*, 180 Neb. 256, 142 N.W.2d 314 (1966). See *Wood v. Lincoln General Hospital Assn.*, 205 Neb. 576, 288 N.W.2d 735 (1980) (notice given to Attorney General as attorney for public charities in action commenced by trustee of charitable trust). Further, we have stated that the Attorney General is in any case a proper party in a litigation involving a charitable trust, whether he or she appears as plaintiff or as defendant. *In re Estate of Grblny, supra.*

In that same vein, the notice requirements in §§ 21-1949 and 21-1977 are intended to recognize the Attorney General as an interested party in actions brought under those statutory sections. The privileges provided by law to public benefit corporations, and other charitable institutions, carry a corresponding obligation to be accountable to the public for the actions such institutions undertake. The public, and particularly charitable donors, are entitled to assurance that their interests are represented in actions where a public benefit corporation is concerned. To that end, the Attorney General is notified in order to represent those interests if necessary. § 21-1918(b)(2). The facts of the present case illustrate *why* the Attorney General has been granted statutory authority to oversee such corporations on behalf of the public good.

In other circumstances in which parties to an action failed to notify an interested party, the action could not proceed without notifying such parties. See, *In re Conservatorship of Holle*, 254 Neb. 380, 576 N.W.2d 473 (1998); *Gentsch, Inc. v. Burnett*, 173 Neb. 820, 115 N.W.2d 446 (1962). We find the same result to be

warranted here. As a matter of basic fairness, a court should not enter a decree affecting the rights of an interested party without providing that party the opportunity to appear and be heard. See *id*. In the case of actions involving public benefit corporations, the statutes recognize the interest of the public. For that public interest to be vindicated, it is necessary for the Attorney General to be notified so that he or she can determine if intervention is warranted. The statute requires that the Attorney General be given notice of claims such as those made by the appellees in the instant case, and that requirement would be meaningless if the action could proceed without notice having been given. There would be no consequence for a party's failure to meet the statutory notice requirement.

A court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless. *Salts v. Lancaster Cty.*, 269 Neb. 948, 697 N.W.2d 289 (2005). If the statutory notice requirement is to be meaningful, and the statutory purpose of permitting the Attorney General to protect the public interest is to be accomplished, then the only reasonable conclusion to be drawn from the statute is that effective notice to the Attorney General is an essential prerequisite to proceeding in any action involving a public benefit corporation for which such notice is required.

The appellees also argue that at the hearing on their motion to alter or amend the judgment, they presented sufficient evidence of such notice. The district court, however, concluded that the evidence of notice was insufficient. Section 21-1915 provides:

Written notice . . . is effective at the earliest of the following:

(1) When received;

(2) Five days after its deposit in the United States mail, as evidenced by the postmark, if mailed correctly addressed and with first-class postage affixed;

(3) On the date shown on the return receipt, if sent by registered or certified mail, return receipt requested, and the receipt is signed by or on behalf of the addressee; or

(4) Thirty days after its deposit in the United States mail, as evidenced by the postmark, if mailed correctly addressed

and with other than first class, registered or certified postage affixed. ·

Because timely notice is essential for the Attorney General to effectively represent the public interest in these proceedings, § 21-1915 explains how a party can evidence its timely compliance with statutory notice requirements.

The intent of the statutory scheme is clear, both in requiring notice and in prescribing when and how notice can be proven effective. The notice requirement of the statutes would be meaningless if a failure to give notice had no consequences, and it would be equally meaningless if the party with the burden of giving notice was not required to prove, at trial, that notice had been effectively given. But in this case, there was no evidence presented at trial establishing any form of notice, much less any of the forms of notice specified by § 21-1915. Even at the hearing on their posttrial motions, the appellees presented only an affidavit from counsel averring that a copy of the complaint had been sent to the Attorney General at the time of filing. The appellants countered with affidavits tending to suggest that the Attorney General had not been made aware of the action until a few days before trial. Furthermore, the district court specifically rejected the appellees' argument that evidence of notice was provided, and denied the appellees' motion to reopen the record so that such evidence could be admitted. An appellee's argument that a lower court's decision should be upheld on grounds specifically rejected below constitutes a request for affirmative relief, and the appellee must cross-appeal in order for that argument to be considered. *New Tek Mfg. v. Beehner*, 270 Neb. 264, 702 N.W.2d 336 (2005). Here, the district court specifically rejected the arguments upon which the appellees are relying, yet the appellees did not perfect a cross-appeal to preserve any complaint with respect to the district court's reasoning.

In short, it was the appellees' burden, as plaintiffs, to notify the Attorney General in a timely fashion and to provide evidence at trial that notice had been given. Instead, no evidence of notice was admitted at trial, and the record contains only conflicting affidavits belatedly submitted in support of posttrial motions. The appellees have not cross-appealed with respect to the district court's understandable conclusion that the evidence of notice to

the Attorney General was not sufficient, and the appellants correctly contend that in the absence of such evidence, the appellees were not entitled to relief.

Thus, we conclude that the district court erred in proceeding to trial without sufficient evidence that the Attorney General was notified of this action and had an adequate opportunity to intervene on behalf of the public. The stakes of this proceeding are simply too high for the district court, or this court, to decide issues on the merits in the absence of proof that the Attorney General's office had the opportunity to discharge its duty to protect the public interest.

Having so determined, we do not consider the appellants' remaining assignments of error. The remaining issues raised on appeal all relate to determinations that the district court should not have made without evidence that the Attorney General had been given effective notice of the action, and the opportunity to intervene, before the district court made its determinations as to the merits of the dispute.

## CONCLUSION

The multiple allegations of fraud, dishonesty, and self-dealing in this case, involving a multimillion-dollar charitable foundation of significant social and community importance, emphasize the need for the Attorney General to have a meaningful opportunity to intervene in the proceedings. This is not a mere technicality. Rather, as the Legislature has directed by statute, and common sense indicates in any event, an effective notice to the Attorney General is essential for the Attorney General to have the opportunity to protect the public interest. Thus, we reverse the judgment of the district court and remand the cause for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

WRIGHT, J., not participating.